STATE of Missouri ex rel. **STATE HIGH-
WAY COMMISSION** of Mis-
souri, Appellant,

v.

Luther **MEADOWS** et al., Donald L. **Gustke**
and Perly Marlene Gustke, Respondents.

No. 8839.

Springfield Court of Appeals.

Missouri.

July 22, 1969.

Robert L. Hyder, Jefferson City, William T. Powers, Springfield, for appellant.

Joe C. Crain, Phillip R. Garrison, Ozark, for respondents.

TITUS, Judge.

Johnny Lawson was one of three commissioners appointed by the Circuit Court of Christian County in this eminent domain proceeding. "After having viewed the property," the commissioners returned "under oath * * * their report * * * setting forth, and stating * * * the net damages" of defendants to be $800. V.A.M.R. 86.06. Exceptions to this report (V.A.M.R. 86.08) yielded a trial wherein the jury allowed defendants $3,500 for their condemnation damages. Plaintiff appealed, and its diffusive claims for a new trial are centered upon the alleged errors of the trial court in refusing to sustain plaintiff's offers,

motions and objections relative to the testimony of Lawson and one C. C. Keller, both called as expert witnesses by the defendants.

Contrary to the commissioners' report, Lawson testified that in his opinion defendants' net damages were $4,000. Without objection, Lawson was asked on cross examination if he, and the two others appointed by the court, had previously made another appraisal of defendants' damages and had filed and signed a report assessing the damages at $800. The unequivocal answer was "Yes." When questioned, "Now, you are coming into court here and saying the damages are $4,000.00?" Lawson replied, "The two boys overruled me. They didn't see what I seen when we assessed the damages." Counsel for plaintiff then undertook to employ and offer into evidence the commissioners' report, but out of the jury's hearing defendants' lawyer objected because it "shows the signature of two other men on the appraisal [one of whom was the son of a juror] who are not witnesses in this case." Plaintiff's attorney countered that he was entitled to use the report in "cross examination for the purpose of contradiction of a commissioner who testifies to a different sum than that stated in the commissioners' award [and to] show that the witness testified to two different figures on the same property." Noting that Lawson had admitted signing the $800 report and had admitted he was testifying to a figure different from that to which he had once attested, the trial court refused plaintiff permission to use the report because "[t]here is no contradiction for you to prove." The trial court also denied plaintiff's supplications for a mistrial or to strike Lawson's entire testimony for the averred reason "that the allowance of two different figures in testimony by this witness is prejudicial." Subsequently invited to account for his change of mind, Lawson explained his first opinion that the defendants' damages were $800 was based upon an understanding the grade of the new highway in front of defendants' property "wouldn't be raised but about two foot higher than the old highway," whereas, in fact, the change of grade was actually just "two inches * * * short [of] seven feet."

■ Initially we observe that when a jury trial is obtained in a condemnation suit, the report of the commissioners becomes functus officio, the question of damages is tried de novo by the jury as though no commissioners had ever been appointed, and although a commissioner is competent to be a witness for either party, the jury should not be informed that he had been a commissioner and it is reversible error to advise the jury of the amount of the commissioners' award. St. Louis-San Francisco Railway Co. v. Morrison, Mo.App., 439 S.W.2d 27, 30(11); State ex rel. State Highway Commission v. Hackett, Mo.App., 370 S.W.2d 712, 715–716(3); State ex rel. State Highway Commission v. Mahon, Mo. App., 350 S.W.2d 111, 114; Arkansas-Missouri Power Company v. Hamlin, Mo.App., 288 S.W.2d 14, 18(8); State ex rel. State Highway Commission v. White, Mo.App., 254 S.W.2d 668, 670(1, 2). Nevertheless, a jury trial in an eminent domain case is governed by the same procedure applicable to ordinary civil causes [State ex rel. State Highway Commission v. Green, Mo., 305 S.W.2d 688, 694(6)], and the cross-examiner of a commissioner who is called as a witness should be permitted to make inquiry (as affecting the credibility and weight of his testimony) whether the commissioner has made a prior statement as to damages inconsistent with his testimony on direct examination. City of St. Louis v. Worthington, 331 Mo. 182, 193–194, 52 S.W.2d 1003, 1008–1009(6). A witness may be discredited or impeached by proof of a contrary statement relating to a material matter, whether that statement is made in or out of court [Neavill v. Klemp, Mo., 427 S.W.2d 446, 448(6, 7); State v. Cross, Mo., 357 S.W.2d 125, 128(9)], but evidence of such a statement does not destroy the prima facie probative effect of the testimony of the witness at the trial. Mil-

ler v. Multiplex Faucet Company, Mo., 315 S.W.2d 224, 227(1); Smith v. American Car & Foundry Div., A.C.F. Industries, Inc., Mo.App., 368 S.W.2d 515, 519(7). However, if the witness unequivocally admits he has made a prior inconsistent or contradictory statement, futher proof thereof is unnecessary and inadmissible because the witness, by his admission, has thereby impeached himself [State v. Wallach, Mo., 389 S.W.2d 7, 12–13(3); 98 C.J.S. Witnesses § 610, pp. 611–613], and the party producing him is thereafter entitled to ask questions or offer evidence to explain, counteract or justify the impeaching testimony. Aboussie v. McBroom, Mo.App., 421 S.W.2d 805, 807(6).

■ We perceive no error in the trial court's refusal to permit introduction or use of the commissioners' report. Lawson admitted he had made an inconsistent statement as to defendants' damages, and additional proof thereof became unnecessary and inadmissible. Also, having become functus officio, the report of the commissioners could not serve as evidence of the amount of damages, admission or use of the report by plaintiff's counsel would have wrongfully apprised the jury of the fact Lawson had been a commissioner, and the jury had "no more right to know what the report or assessment of damages of the commissioners was than any jury in any case has to know what the verdict of a previous jury was in the same case. Kansas City Southern Ry. Co. v. Second Street Imp. Co., 256 Mo. 386, 421, 166 S.W. 296, 306. Although Lawson stood impeached as a witness because he admitted to a prior inconsistent statement, this did not serve to totally destroy his testimony which properly remained in the case to be afforded such weight and credence as the jury chose to allow. Goodson v. M.F.A. Insurance Company, Mo.App., 429 S.W.2d 294, 298–299(2); Cox v. Moore, Mo.App., 394 S.W.2d 65, 67(1).

■ C. C. Keller's qualifications as an expert went unchallenged on direct ex-

amination when he gave his opinion that the condemnation of defendants' property and access rights had resulted in net damages of $3,750. A lengthy cross-examination ensued, sometimes spiced with acrimony by both the examiner and the witness, whereby plaintiff's counsel closely interrogated Keller as to the particular items he had considered in arriving at his opinion. After fifteen pages of the transcript had been consumed by cross-questioning, the following occurred:

"Q I believe [you allowed] $1,000.00 for the land, now you still have $2,750.00 left. A I got more than that. I am going like you do, I am going to cut one-fourth of the value off of that farm because that highway is—I will take $7,000.00 damage now.

"Q You will change your testimony? A If you are going to do it that way.

"Q Before when Mr. Crain [defendants' lawyer] asked the question it was damaged $3750.00, now you are saying $7,000.00, is that correct, sir? A You heard me. If you don't like $3750 try $7000 for size. Don't question me or I might double my damage.

"MR. POWERS [plaintiff's attorney]: Your Honor, I ask the witness's entire testimony be stricken, he has disqualified himself on the stand, ask that the jury be instructed to totally disregard his evidence on the basis of the statement he just made from the stand.

THE COURT: Request denied.

"Q (By Mr. Powers) What is your damage now, Mr. Keller, $7,000.00? A Like I started out $3750.00. I will stand by that anywhere. * * * I said if it were mine and had to sell it I would say a fourth of the value of the place was damaged because of what has been done there by the highway. $3750.00 is my damage.

"Q Are you taking back the statement of $7,000.00? A That wasn't the

damage. I said I would take that if it were mine, I wouldn't give it.

"Q There is a difference of what you would take and what you would give? A It isn't mine.

"MR. POWERS: I ask that the whole testimony be stricken. I make the same objection. THE COURT: Overruled."

On redirect examination:

"Q If it was your place and you valued it at $28,500.00 you would take one-fourth less than that, $7,000.00? A I would figure it was one-fourth less.

"MR. POWERS: I ask that any testimony regarding whether it was his place be stricken. It has absolutely nothing to do with this case. THE COURT: Objection sustained as to this part of his testimony in response to Mr. Crain's question."

Although we do not comprehend the entire nature and meaning of Keller's repartee on cross examination, we picture its intendment to be that had defendants' property belonged to Keller he would opine his damages were $7,000, but since he was appraising the damages on other than personal considerations he would abide by the $3750 figure "Like I started out." As previously noted, Keller's direct examination testimony that defendants' damages were $3750 was received without objection, and there still is no complaint, per se, as to this particular portion of Keller's evidence. Rather, plaintiff complains that the trial court erred in failing to eliminate all of Keller's testimony from the jury's consideration.

Where some of the testimony of a witness is material and has not been previously objected to, a motion to strike all of the testimony of the witness when he testifies to objectionable evidence is improper, and the court does not err in overruling the motion. If less than all of the witness' testimony is to be properly stricken, the mov-

ant should specify the particular part of the testimony that he is asking be stricken. Gerald v. Caterers, Inc., Mo.App., 382 S.W. 2d 740, 744(7, 8), and cases there cited. Assuming that Keller's testimony regarding the $7,000 figure was improper because it was not predicated on acceptable considerations for adjudging damages, it was incumbent upon plaintiff to move the court to strike only the objectionable part. Under the general rules just cited, the trial court did not err in refusing plaintiff's motions that "the *whole* testimony" and "the witness's *entire* testimony be stricken." However, when plaintiff on redirect examination of Keller did move that this particular portion of Keller's testimony be stricken, its position was sustained by the trial court.

A similar situation as presented in the instant case is reported in State ex rel. State Highway Commission v. Mink, Mo. App., 292 S.W.2d 940. There a witness for the defendant landowners testified without objection on direct examination as to his opinion of the property values before and after condemnation. On cross examination, in answer to questions concerning values, the witness stated a damage figure "on what it would be worth to me." The condemnor moved to strike all of the witness' testimony and complained on appeal that the trial court erred in permitting the testimony of the witness to go to the jury. The court held, l. c. 946–947(10, 11), that the testimony of the witness as to the value of the land "to me if I was buying a place" was inadmissible, but since "a part of witness' testimony was admissible" the "motion to strike all was properly overruled." Another example of a like factual situation is contained in Brouster v. Shell Pipe Line Corporation, Mo.App., 16 S.W.2d 672–673 (1).

The judgment is affirmed.

HOGAN, P. J., and STONE, J., concur.